ELLIS, Judge.
This suit was originally instituted to enforce a promissory note and chattel mortgage dated December 23, 1959, on certain furniture which the defendant, Ralph J. Fillion, bought from the plaintiff, Royal Furniture Company of Baton Rouge, Inc. The suit was brought by ordinary process and the defendant filed an answer and re-conventional demand alleging that the chat *260 tels which were described in the chattel mortgage sued upon, had been illegally seized by the plaintiff and damages were sought for this wrongful seizure.
After a trial on the merits, judgment was rendered for the plaintiff and the defendant has perfected a devolutive appeal from this unfavorable judgment.
Several facts are not in dispute. On or about the 23rd day of December, 1957, defendant bought a recliner chair from the Royal Furniture Company of Baton Rouge, Inc., and executed a new note and chattel mortgage covering the new chair and certain other chattels which were bought earlier from the same company. (Payments totalling $40 were made on this account.)
The defendant, Ralph J. Fillion, moved from a house he was renting from Mr. Vincent Salemi on North 22nd Street in Baton Rouge, Louisiana, on or about March 19, 1958, without notifying plaintiff’s agents of his new address. At this time he removed many items from the leased premises, but left the chattels which were mortgaged to the plaintiff. The defendant was in default on his installment payments to plaintiff and also on his rent payments to Mr. Salemi at the time he moved out.
On or about March 24, 1958, agents for Royal Furniture Company of Baton Rouge, Inc., were notified by Mrs. Howard Man-cuso, a joint owner of the house which Ralph J. Fillion had rented, that the house had been vacated by Fillion and was to be leased to another party. Mrs. Mancuso requested the furniture company’s agents to remove all the furniture from the leased premises since she understood the furniture company held a mortgage on that furniture.
On advice of counsel, agents of the furniture company made efforts to notify Ralph J. Fillion of their intention to remove the chattels, but were unsuccessful in these efforts. They then removed the chattels in question from the rent house of Royal Furniture Company of Baton Rouge, Inc., made an inventory of it, and stored for safekeeping in a warehouse of Royal Furniture Company.
There are several significant points in the record herein which are in conflict. Defendant testified that he attempted several times to get the agents of the furniture company to fix the vibrator chair, the refrigerator, and the washing machine and refused to pay on his account until these repairs were made.
His testimony is contradicted by Mr. Alfred H. Birmingham, who was working for the plaintiff company at the time that the defendant was negotiating with it and who also handled defendant’s account.
Mr. Birmingham testified that the defendant called him and asked him to take the furniture back, because defendant had voluntarily separated from his wife and would have no further use for the furniture. Mr. Birmingham states that he suggested, at this time, that Fillion advertise in the paper to get someone to buy the furniture for the balance of the note. Both Mr. Birmingham and Ralph J. Fil-lion agreed on this point. An advertisement of the furniture in question was actually made. Mr. Fillion said, however, that the suggestion to advertise was made after Mr. Birmingham had refused to have the allegedly defective appliances repaired and after Fillion had refused to make further payments.
Redhibition was not urged in the defendant’s answer and reconventional demand. Little proof was introduced to substantiate defendant’s testimony on this point, especially as regards the nature or the extent of the vices and defects. Defendant’s wife did testify as follows on this point:
“A. The refrigerator was broken, one of the shelves in it, and the washer didn’t work and the leg on the chair and also the lining on the chair was coming undone.
*261 "Q. All that was wrong with the refrigerator was a broken shelf, is that right? A. And it defrosted all the time.”
.Defendant testified that he notified his lessors of his intention to vacate the leased premises. He also states that he made an agreement with them to pay rent for only that part of the month in which he continued to store his property on the leased premises. These claims were flatly denied by Mrs. Howard Mancuso, one of his lessors.
Mr. Birmingham testified that as soon as the whereabouts of the defendant were ascertained, he was told he could pick up the furniture from the warehouse and the defendant then stated that he would come to see about the furniture. After several such assurances followed by no positive action, the plaintiff filed suit. The defendant denies having been told he could pick the furniture up.
Mr. Birmingham’s testimony is substantiated by the testimony of plaintiff’s attorney who stated that he had advised Mr. Birmingham to take such action.
The defendant testified that he came back after the plaintiff’s agents had removed from the house on North 22nd Street and got several items which were still there, including his wife’s pots and pans. Defendant’s own wife contradicted his testimony on this point. She stated that she removed her pots and pans from the leased house when the first move was made. (Apparently, there had been a reconciliation between the defendant and his wife since she testified to the effect that she and her husband had not ever been “actually legally separated.” The record is not clear on this point.)
At the time defendant’s answer and re-conventional demand was filed, defendant’s attorney was notified that defendant was free to obtain his chattels from their warehouse. The letter to this effect is in the record.
Other discrepancies could be brought out, but this would serve no purpose. Suffice it to say that this court agrees with the trial court on its basic findings.
There was no wrongful taking here. Plaintiff’s agents were acting on advice of counsel in their actions in removing and storing the abandoned chattels. They made efforts to contact defendant prior to removing the chattels in question to plaintiff’s warehouse.
Defendant had vacated the premises he leased at a time when his note was in default without notifying plaintiff of his intentions. It appears from the record that the defendant’s testimony was rebutted on all conflicting points by a preponderance of the evidence. Plaintiff’s agents were urged by defendant’s lessors to remove the chattels and those lessors actually aided, them in the removal of the chattels. As soon as» possible, plaintiff’s agents notified defendant that he could get his chattels from the warehouse and delayed filing suit in anticipation of defendant’s return for those items. Finally, suit was filed. At this point, the defendant filed an answer and by reconventional demand sought damages for wrongful seizure, inconvenience, humiliation and several other items.
This suit is similar in nature to the case of Finance Security Company v. Stuart, La.App., 75 So.2d 353, 355. The following portion of that opinion is particularly pertinent :
“ * * * As to a wrongful repossession, it does not appear the plaintiff ever repossessed the car. The defendant gave a representative of the plaintiff a key to the automobile voluntarily, but the plaintiff never did take possession of the car. In fact, the defendant himself abandoned the car when he bought another automobile, leaving it on the street near the place of business where he purchased this second-car. Later, the vendor of the second automobile was notified by the Police • Department to remove any cars he had • *262 on this street. * * * The defendant’s car was abandoned there and it, the plaintiff, then moved the car to a garage where it remained. The defendant’s attorney was notified by the plaintiff that the abandoned car had ■ been moved, and that either the defendant or his attorney could pick the car up at any time. The defendant himself testified he was not interested in the car and consequently there was no repossession by the plaintiff, but merely a protection of the property upon which it believed it had a valid chattel mortgage. * *
Attorneys for defendant urge on appeal that there was a wrongful taking here and they cite numerous authorities to this effect. Under the facts the defendants had abandoned the furniture and premises.
For the reasons assigned, we feel that defendant’s demands were not well founded and they will be disallowed.
The judgment of the trial court is affirmed at the cost of the defendant.